Derbigny, J.
delivered the opinion of the court. The plaintiff and appellant claims a tract of land, part of which is in the possession of the defendant. The title which he presents, is a certificate of the commissioners of the land office, containing a settlement right, the history of which is as follows: in the year 1790, or 1791, one Jesse Kirkland began some clearing on the land in contest, which was then a part of a tract of country assigned to the Choctaw tribe of Indians, a long time before. Kirkland's clearing consisted of two or three acres of ground, on which he had cut the canes and planted some corn: he never lived there, and made only one crop: he sold his corn and the crib that contained it to one Martin Trentham, who continued sometime to cultivate there, it is said about five acres; he lived in a cabin made of pickets: some of the witnesses say he was there only by permission of the Indians, because he was a gunsmith, and mended their guns. Trentham, *656 after one or two years residence on that spot, went away, and never returned to it again. An attempt has been made to shew, that Jesse Kirkland, his predecessor, had applied by requéte for the land; but that fact was not proved. Twelve or thirteen years after Tren-tham had left the place, his widow undertook to take possession of it again.
*655 Matthews, J. did not join in this opinion, having some interest in the decision of the question in controversy..
*656 In the mean time, however, say about twenty-two years ago, the Pascagoula and Biloxi tribes of Indians were removed to bayou Bœuf, and, with the consent of the Choctaws, were located on part of their land: the portion which includes the land here in contest, falling to the share of the Pascagoulas. The Pascagoulas remained in possession of that tract until the year 1802, when they and the other Indians, their neighbors, did, with the approbation of the Spanish government, sell their respective portions to Miller and Fulton, under whom the defendant now holds. Under that purchase, Miller and Fulton applied to the commissioners of the land office for a confirmation of their claim; and by the law of April, 1816, it was confirmed, as the court then conceived it, to the extent of one league square.
To facilitate the decision of this cause, in case that league square should include the land *657 here in contest, this court had, by an interlocutory decree, ordered that verification to be made; but, as it appears by the return of the survey, that a portion of that land is not embraced by the league square, the cause remains in the same situation.
It has been contended by the defendant, that the act of congress, above mentioned, did not merely confirm the purchase of Miller and Ful0ton to the extent of one league square for the whole, but of one league square for each purchase, each being a separate claim or orginal right, though included in the same application for confirmation. Waving, however, any inquiry into that question at present, we will now investigate the defendant’s right, on the original merits, independently of any confirmation by the United States.
It is unnecessary here to determine what was the rights of the Indians to the soil of America, when the Europeans took possession of it. The defendant is probably correct, when he considers them as the primitive lords of the land. But they were not indistinctly and promiscuously owners of the whole. The several tribes, who inhabited this country, were independent and separate. Each was in possession of a certain extent land, over which they *658 claimed the right of ownership. In order then to apply to the present case the principle contended for by the defendant, he ought to have shewn tribes, under whom he claims, were, at the time of the arrival of the Europeans, the occupants of the tract here in dispute. But the reverse being the case, this part of his defence cannot avail him.
The fact, as given to the would, in all the laws enacted on the subject is, that the king of Spain, in taking possession of his dominions in America, disregarded the rights oft the original lords of the soil, and declared himself the sovereign of the country. As some compensation, however, for that usurpation, he assigned to the former proprietors such extent of land as they wanted; and particularly took care to secure to them, by law, such tracts as he conceived were sufficient for the purposes of cultivation, and the which pasturage of their cattle. In the title 12th, book 4th, of the Recopilacion de las Indias, treats of the manner in which lands shall be disposed of generally, the law 13, among other dispositions, provides that the Indians “shall be maintained in the possession of the lands which had hitherto been allotted to them, and shall receive any additional quantity which they may want.” On the regulations concerning the *659 lands and villages of the Indians, the whole 3d title of book 6th may be referred to.
The law 8th of that title, however, particularly says-"the seats on which the villages of the Indians shall be placed, shall be such as are well provided with water, arable lands and Woods, and to which there may be easy access, and they shall have a common of one league in extent, where their cattle may graze, without being mixed with that of Spaniards.”
But, it is contended on the part'of the plaintiff-1. that, in this case, the land was not assigned to the Pascagoula and Biloxi tribes by the proper authority-and 2. that, if it were, yet die Indiana did not acquire an absolute title to the land, so as to be capable of transferring it to other persons.
I. The evidence, as to the first of these objections is, that the Baron de Carondelet, then governor of Louisiana, ordered Valentine Lessart, commandant of Rapides, to remove the Pasca-goula and Biloxi tribes of Indians to the district of Catahoulou; but that, upon representation made to the governor, he thought proper to dispose that those tribes should be located on the bayou Boeuf, along with the Choctaws, and that they were so located with the consent of the *660 Choctaws. It is well known that, for the location ot an Indian village, no such thing as formalities and written proceedings were in use in this country. An order from the governor to that effect was sufficient, as it was in many other instances of greater importance. Valentine Lessart himself has been heard on that point, and his testimony corroborated by others, and by the long possession which those Indians had of that tract of land, is deemed sufficient and satisfactory.
II. But, it is said, that such location of the Indians, on any trait of land, did not convey to them the property of the soil, but gave them a mere possession, for the temporary purposes of the Indian mode of life. By the laws of the Indies, 6, 1, 27, however, it is recognized, that Indians can hold land, as well as other people; nay, that they can alienate it, with permission of government. That this was holden by them, as owners, there can be no doubt; there they had their villages and fields; there they lived permanently for a number of years; it was not a place of temporary residence; it was their home.
But, if the Indians, under whom the deffen-dant holds, were proprietors of the soil in dis *661 pute, and could sell it, yet it is contended, that the sale which they undertook to make of it, is not a valid one, and, consequently, could convey no title to purchasers. It is true, that the laws of the Indies require the property of the Indians to be sold at auction, and that this was • private sale. But, although we are disposed to believe that the subsequent approbation the governor of the province did care that defect, supposing that it did not, the result would be that the Indians have not been legally divested of their title, and could perhaps take advantage of that against the defendants; until then, the defendants hold in their right, and cannot be disturbed by others.
I. Baldwin for the plaintiff, Johnson for the defendants.
Although the court has already said, in the case of Reboul vs. Nero, that the Indians were entitled by law to one league in extent, round their villages, ante 490, it is deemed unnecessary to determine it; for allowing them much less, it would still embrace the property in dispute.
It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be affirmed, with costs.